378 A.2d 809

**COMMONWEALTH of Pennsylvania**

v.

**Alfonso ROBINSON, Appellant.**

Supreme Court of Pennsylvania.

Argued March 29, 1976.

Decided Oct. 7, 1977.

314

Defender Association of Philadelphia, Benjamin Lerner, Defender, William Stewart, First Asst. Public Defender, John W. Packel, Asst. Public Defender, Chief, Appeals Div., for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Glen S. Gitomer, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

PER CURIAM.

Judgment of sentence affirmed.

JONES, former C. J., did not participate in the decision of this case.

ROBERTS, J., files a Dissenting Opinion in which MANDERINO, J., joins.

ROBERTS, Justice, dissenting.

The trial court's opinion reveals that appellant was held in criminal contempt on the basis of facts not appearing in the record. It is axiomatic that a criminal conviction cannot be upheld when sufficient evidence to support the conviction does not exist in the record. See, e. g., *Commonwealth v. Stanley*, 453 Pa. 467, 309 A.2d 408 (1973). This proposition applies with equal force to contempt. *Commonwealth v. Africa*, 466 Pa. 603, 353 A.2d 855 (1976) (plurality opinion). Because facts recited in a court opinion cannot serve as a substitute for facts of record, *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974), insufficient evidence exists to support appellant's conviction. Therefore, I must dissent.

Appellant, a member of the M.O.V.E. organization, was one of several individuals convicted in Municipal Court of obstruction of justice, disorderly conduct, failure to disperse and conspiracy. During a trial de novo in the court of common pleas, appellant was held in criminal contempt. The record shows that at this trial certain events occurred, noted by the stenographer as "disturbances" interspersed by orders of the court that the courtroom be cleared. The record is void of any facts describing appellant's participation, if any, in these events.

The next morning, appellant refused to enter the courtroom when his case was called. Upon learning of appellant's refusal, the court ordered appellant apprehended and brought before the court. The court then cited appellant and his co-defendants for criminal contempt:

"All counsel are present. Gentlemen, this Court has the authority to protect against those who disregard it [sic] dignity, its authority, and disobey its orders.  .  .  .

I find that each of you have [sic] defied the orders of this Court. You have challenged the integrity of this Court.

Accordingly, I adjudge each one of you in contempt. You are fined the sum of $300, to be paid forthwith.

Upon failure to pay such sum forthwith you are ordered to be sentenced to serve a sentence not to exceed 90 days."

The court did not specify on the record the conduct prompting the adjudication of contempt.

In its opinion in support of the contempt citation filed eight months later, the court described the allegedly contemptuous behavior:

".  .  . the appellant appeared in court accompanied by a large number of supporters, who were very noisy when they entered the courtroom.  As proceedings were about to commence, this group started yelling, shouting and screaming to such an extent that Sheriff's deputies had to be called.  This loud uproar was accompanied by vulgarities and profanities issuing from various individuals in the group, including the defendant.

The appellant himself reached the point where he addressed certain vulgar remarks to the court itself, including such terms as 'mother-fucker' and 'son of a bitch.' The disturbance, in which the appellant joined, reached such a pitch that the judicial proceedings had to be suspended and the courtroom cleared by Sheriff's deputies.  Because of appellant's conduct, he was adjudged to be in direct criminal contempt."

The only evidence of contemptuous conduct appearing in the record which can be attributed to appellant was his late appearance at court.  However, it is apparent that the court founded its citation for contempt solely on the disrespectful comments and disturbances within the courtroom, for which we have no evidence in the record of appellant's contribution.

This Court has held without exception that only facts appearing in the record may be relied upon to support a criminal conviction.  *Commonwealth v. Jasper,* 472 Pa. 226, 372 A.2d 395 (1976); *Commonwealth v. Africa,* 466 Pa. 603, 353 A.2d 855 (1976) (plurality opinion); *Commonwealth v. Thomas,* 465 Pa. 442, 350 A.2d 847 (1976); *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974); accord, *Thompson v. City of Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654

(1960). Recently, this Court, reiterated that "we will not consider any question which depends upon facts not contained in the record." *Commonwealth v. Thomas, supra,* 465 Pa. at 449, 350 A.2d at 850.

Accordingly we have refused to accept assertions of fact contained in opinions of the trial court where the record was deficient as to these facts. *Commonwealth v. Africa, supra* (plurality opinion); *Commonwealth v. Young, supra.* In *Africa,* the trial transcript disclosed no evidence of the contemptuous conduct cited by the trial court as the basis for the contempt convictions of several defendants. The trial court described the alleged offensive behavior in an opinion written several months later. Although we had "no doubt that the court has accurately recited what transpired," *Commonwealth v. Africa, supra* at 625, 353 A.2d at 866, we nonetheless discharged the convictions because they were not founded on evidence in the record.

Here, the trial court announced in open court that it was holding appellant in contempt for defying court orders and challenging the integrity of the court. The court could have dictated to the court reporter a description of the contumacious conduct, as the trial court did in *Commonwealth v. Patterson,* 452 Pa. 457, 308 A.2d 90 (1973).* However, it failed to do so. Thus, there is no evidence of record of the disturbances noted by the court reporter which would sup-

---

* The only proper means for correcting or amending the record was through compliance with statutory procedures. Act of May 11, 1911, P.L. 279, § 4, 12 P.S. § 1199 (1953); *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974). Having failed either to place the relevant facts on record in open court or to amend the record according to required procedures, the court itself is responsible for the gap in the record.

> "When a matter is brought to this Court on appeal, it necessarily comes before us on a printed record, and the litigants are entitled to have their rights adjudicated on the basis of what *the record* shows and not upon what the court below may intimate or suggest is not shown. If the record in this case is in any way deficient, it is *the fault of the trial judge for not having had it truly and fully* reflect all material and important trial matters." (emphasis in original).

*Commonwealth v. Lofton,* 389 Pa. 273, 282, 133 A.2d 203, 207 (1957).

port appellant's conviction for contempt. We must reverse the conviction as unsupported by the record.

MANDERINO, J., joins in this dissenting opinion.